IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RIXIE DILLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:05CV12-WWO |
| ) | |
| HOMEQ SERVICING, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, an Alabama resident, commenced this action in the Circuit Court of Macon County, Alabama, against two foreign corporations, Wachovia Bank, N.A.[1] and HomEq Service Corporation, and against Mortgage Corporation of the South ("MCS"), an Alabama corporation.[2] Defendants Wachovia and HomEq removed the action to this court on the basis of diversity of citizenship, asserting that MCS is fraudulently joined in this action, and on the basis of bankruptcy jurisdiction. This action is now before the court on plaintiff's motion to remand. Upon consideration of the motion, the court concludes that it is due to be granted.

---

[1] Wachovia is "formerly known as and incorrectly identified in the Complaint as 'First Union National Bank.'" See Notice of Removal.

[2] Defendants originally maintained that MCS was not an Alabama corporation at the time of removal. However, defendants subsequently conceded, based on evidence filed by plaintiff, that MCS is a citizen of Alabama for purposes of determining diversity jurisdiction. (Doc. # 8, p. 1 n. 1).

## DISCUSSION

### Diversity Jurisdiction

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 716 (1996). However, federal courts are courts of limited jurisdiction. Thus, with respect to motions to remand cases removed to this court pursuant to 28 U.S.C. § 1441, the law of this circuit favors remand where federal jurisdiction is not absolutely clear. In "deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court." Burns v. Windsor Insurance Co., 31 F.3d 1092, 1095 (1994).

In cases removed on the basis of diversity of citizenship, the court does not consider the citizenship of fraudulently joined defendants in determining the existence of jurisdiction. Defendants may demonstrate fraudulent joinder by showing that (1) there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) there has been outright fraud in the pleading of jurisdictional facts; or (3) the claim against the nondiverse defendant has no real connection to the claims against the diverse defendants. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)(citations omitted). In the present case, defendants do not allege "outright fraud" in the pleading of jurisdictional facts or that the claims against MCS have no connection with

the claims against the non-diverse defendant. Rather, defendants argue that there is no possibility that plaintiff can prove his claims against the resident defendant.

The burden of the removing party is a "heavy one." B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, *supra*, 154 F.3d at 1287.

The Eleventh Circuit has endorsed a "summary judgment-like procedure for disposing of fraudulent joinder claims." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989). However, "[t]he jurisdictional inquiry 'must not subsume substantive determination.' . . . When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

*Plaintiff's Claims Against the Resident Defendant*

In his complaint, plaintiff alleges that on or about September 30, 1998, he borrowed the sum of $37,500.00 from defendant MCS and that the loan was secured by a mortgage on plaintiff's home in Macon County. On the same day, MCS assigned the mortgage to First Union National Bank (now Wachovia). (Complaint, ¶ 6). Plaintiff alleges that defendant MCS "represented to Plaintiff in the mortgage that his payments would be

3

applied 'first to any prepayment charges due under the Note; second to amounts payable under paragraph 2 [of the mortgage]; third to interest due; fourth to principal due; and last to any late charges due under the Note." (Complaint, ¶ 9).  He further alleges that the representation was false, that defendants knew that it was false, that defendants failed to properly credit plaintiff's account with his payments and commenced foreclosure proceedings on his home.  (Id., ¶¶ 34, 37-41).  Plaintiff also alleges that defendants suppressed: (1) the fact that his payments would not be correctly credited to his account; (2) that although he was current in his payments, his home would still be foreclosed upon; (3) that plaintiff could not make his payments in advance of the due date and, if he did, the payments would not be properly credited to his account for the months he intended; and (4) the manner in which all payments made in advance of their due date would be applied to his account. (Complaint, ¶ 45).

Plaintiff contends that he brings valid claims against MCS and, thus, diversity of citizenship is lacking.  Wachovia argues, as to the misrepresentation claim, that the claim is "wholly ineffective" because the alleged misrepresentation is (1) not false; and (2) is simply a term of the loan agreement.  Wachovia further argues that plaintiff cannot possibly show that MCS made any representation it did not intend to perform, as required to succeed on a promissory fraud claim, as its only intention was to immediately assign the loan contract.  In its response to the motion to remand, MCS raises the identical arguments

4

presented by Wachovia and, in addition, argues that the statute of limitations has expired.

If plaintiff cannot prove that the representation made by MCS is false, he cannot prevail on his misrepresentation claim. Plaintiff alleges that he made payments as required by the mortgage and that the "defendants" failed to properly credit his account with those payments.[3] (Complaint, ¶¶ 12-31, 37-38). He further alleges that the representation made by MCS regarding application of the payments was false and that "defendants" knew it was false. (Id., ¶ 39). Since plaintiff has alleged falsity of the representation and has a possibility of proving this allegation, defendants' argument regarding the truthfulness of the statement does not demonstrate that MCS is fraudulently joined. Additionally, if the representation were false, its inclusion in the written terms of the mortgage would not preclude a fraud claim.[4]

The misrepresentation allegedly made by MCS in this case was a promise to apply future payments in a certain manner. Thus, the allegation is one of promissory fraud. "To prove promissory fraud, the plaintiff must show: (1) that the defendant made a false representation of a material fact; (2) that the plaintiff relied upon the false representation;

---

[3] The court accepts that this particular allegation cannot include MCS by virtue of the assignment.

[4] See La Pesca Grande Charters, Inc. v. Moran, 704 So.2d 710, 712 (Fla. App. 1998)("The notion that a knowing fraud perpetrated to induce someone to enter into a contract can be extinguished by the simple expedience of including the fraudulent representation in the contract makes no sense.").

(3) that the plaintiff was damaged as a proximate result of the reliance; (4) that the representation was made with a present intent to deceive; and (5) that at the time the representation was made, the defendant intended not to perform as promised." Beaulieu v. Wynfrey Hotel, Ltd., 718 So.2d 83, 84 (Ala. Civ. App. 1998)(citation omitted). Defendants contend that, since MCS intended only to immediately assign the contract, plaintiff cannot establish that MCS intended not to perform the contract. However, the fifth element above – intent not to perform as promised – could be satisfied by evidence that, at the time plaintiff and MCS entered into the contract, MCS knew that its assignee would not perform the contract as promised. Plaintiff has alleged that MCS knew that the promise to apply payments in the specified manner was false and, therefore, he has sufficiently alleged a promissory fraud claim against MCS.

Plaintiff ultimately may not be able to support his allegation with proof. However, the court's inquiry in the fraudulent joinder context is limited to whether there is *any possibility* that plaintiff can prove his cause of action, not whether he is likely to prevail on the merits. Crowe, *supra*. The evidence of record on this issue presently includes only the mortgage documents, including the assignment. The mere existence of the assignment does not negate the intent required to support a promissory fraud in the inducement claim, and the court is unable to conclude that there is no possibility that plaintiff can produce evidence in support of his allegation. Therefore, defendants have not met their heavy

6

burden of demonstrating that there is no possibility that plaintiff can prove his fraud claim against MCS.[5]

As defendant MCS argues, the statute of limitations for a fraud claim is two years. However, the two year period does not begin to run "until the discovery by the aggrieved party of the fact constituting the fraud . . . ." Ala. Code, § 6-2-3. According to plaintiff's complaint: (1) he made advance payments throughout calendar year 2003; (2) those payments were applied to principal and interest in accordance with his note; (3) he was never notified during that year that it was unacceptable to make advance payments; and (4) he was informed by letter on June 21, 2004 that he was in default on his loan. (Complaint, ¶¶ 12-32). Plaintiff filed the present action in the Circuit Court of Macon County on December 1, 2004, and MCS was served with the summons and complaint on February 23, 2005. The court is unable to conclude that there is no possibility that plaintiff can establish that this action was commenced within the statute of limitations and, thus, MCS has not established fraudulent joinder on this basis.

### Bankruptcy Jurisdiction

Defendants assert that this court has bankruptcy jurisdiction pursuant to 28 U.S.C.

---

[5] Cf. Batoff v. State Farm Insurance Co., 977 F.2d 848, 852 (3rd Cir. 1992)("[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.").

§ 1334(b).

> Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This provision creates jurisdiction in three categories of proceedings: those that "arise under title 11," those that "arise in cases under title 11," and those "related to cases under title 11." . . . "Arising under" proceedings are matters invoking a substantive right created by the Bankruptcy Code. . . . The "arising in a case under" category is generally thought to involve administrative-type matters . . . or . . . "matters that could arise only in bankruptcy."

In re Toledo, 170 F.3d 1340, 1344 (11th Cir. 1999)(citations omitted). "Disputes which 'arise under title 11' or 'arise in cases under title 11' are called 'core proceedings.' Core proceedings are those proceedings which would not exist in law were it not for the Bankruptcy Code." Hatcher v. Lloyd's of London, 204 B.R. 227, 230 (M.D. Ala. 1997)(citations omitted).

In In re Lemco Gypsum, Inc., 910 F.2d 784 (11th Cir. 1990), the Eleventh Circuit adopted the following test for determining the existence of "related to" jurisdiction:

> "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

Id. at 788 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984)). Defendants argue that this court has "related to" bankruptcy jurisdiction over plaintiff's claims and,

8

further, that this action is a "core" bankruptcy proceeding. In his bankruptcy proceeding, plaintiff listed the fraud claim he brings in the present action as a contingent or unliquidated claim of an unknown amount. Plaintiff's confirmed plan provides for full payment of all creditors and further provides that "[a]ny proceeds recovered from litigation will be committed to Plan." (See Plaintiff's Exhibit 1 to Doc. # 9).

Plaintiff contends that this action is neither "related to" his bankruptcy action nor a core proceeding in bankruptcy and, therefore, that this court lacks subject matter jurisdiction.

> For the purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under," "arising in a case under," or "related to a case under," title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.

Matter of Wood, 825 F.2d 90, 93 (5th Cir. 1987). Because plaintiff's confirmed plan commits the proceeds of this litigation to the plan, the present action "could conceivably have an effect on the estate being administered in bankruptcy." See Lemco Gypsum, *supra*, 910 F.2d at 788 (citation omitted). Therefore, this case is "related to" plaintiff's bankruptcy action and this court has jurisdiction pursuant to 28 U.S.C. § 1334. See In re Toledo, *supra*, 170 F.3d at 1345 ("The key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad.").

**Bankruptcy Abstention**

Plaintiff argues that, if this court has bankruptcy jurisdiction, it should abstain from exercising that jurisdiction pursuant to 28 U.S.C. § 1334(c)(1) and (c)(2). If this case meets the requirements of § 1334(c)(2), the court is required to abstain and must remand the action to the state court. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Defendants argue that mandatory abstention is not applicable because plaintiff did not make a "timely motion," and because this case is not simply "related to" plaintiff's bankruptcy action, but is a core proceeding.[6]

Defendants removed the present action to this court on January 5, 2005 on the basis of diversity and bankruptcy jurisdiction. (Doc. # 1). Four weeks later, on February 2, 2005, plaintiff filed a motion to remand arguing that diversity jurisdiction is lacking. In the motion to remand, plaintiff did not address defendants' contention that this court also has bankruptcy jurisdiction. Defendants responded to the motion to remand on February 15, 2005, again noting that the case falls within the court's bankruptcy jurisdiction. (Doc. # 8).

---

[6] Defendants also argue that mandatory abstention is not applicable because this court has diversity jurisdiction. This issue has been resolved against defendants, *supra*.

10

On February 16, 2005 – six weeks after removal and two weeks after his motion to remand was filed – plaintiff filed a supplement to the motion to remand and reply to defendants' opposition to the motion to remand arguing, *inter alia*, that mandatory bankruptcy abstention is applicable. (Doc. # 8). Defendants contend that because plaintiff first advanced his abstention argument six weeks after removal, his motion is not timely for purposes of § 1334(c)(2).

While § 1334(c)(2) requires a "timely" motion, it does not establish a fixed time limit for seeking abstention. Defendants argue that the applicable time period is thirty days, as set forth in 28 U.S.C. § 1447(c), which requires that "a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." Assuming that § 1447(c) provides the appropriate time limit, the court concludes that plaintiff has met the requirement of a "timely motion" under § 1334(c)(2). Plaintiff filed a motion to remand within 30 days. Although the initial motion did not address abstention, plaintiff raised the issue in a supplement filed only two weeks later, before the motion to remand was taken under submission. The court concludes that consideration of plaintiff's abstention argument in the context of his timely-filed motion to remand does not run afoul of the requirement of § 1334(c)(2) for a timely motion. Cf. Velchez v. Carnival Corporation, 331 F.3d 1207 (11th Cir. 2003)(stating, in determining that the court lacked jurisdiction to entertain an appeal of a district court's

11

remand of a non-bankruptcy case on procedural grounds other than those raised in the plaintiff's motion to remand, that "[w]hen a party moves for remand . . . that party wants to go back to state court. The motion establishes that the moving party does not want to acquiesce in the federal forum despite any procedural defects.").

Defendants argue that "the claims in the instant action are core because they bear directly on the debtor-creditor relationship between the Plaintiff and Defendants that has been administered by the Bankruptcy Court during the plan confirmation process." (Doc. # 11, p. 7). Only one of the three defendants, however, is a creditor of the plaintiff. Additionally, in the underlying complaint, plaintiff does not seek equitable relief such as rescission or reformation of the loan contract. He seeks only monetary damages from the creditor and non-creditor defendants.

> For a case to be considered a core proceeding, the case must not have been able to exist "but for" bankruptcy. Hatcher v. Lloyd's of London, 204 B.R. 227, 231 (M.D. Ala. 1997). In other words, core proceedings are those proceedings which would not exist in law in the absence of the Bankruptcy Code. Dean v. American General Finance, Inc., 191 B.R. 463, 468 (M.D. Ala. 1996)(citing Thomasson v. AmSouth Bank, N.A., 59 B.R. 997 (N.D. Ala. 1986)). "If the proceeding does not involve a substantive right created by the federal bankruptcy law and is one that could exist outside bankruptcy **it is not a core proceeding;** it may be related to the bankruptcy because of its potential effect, but under § 157(c)(1) it is an 'otherwise related' or non-core proceeding." Gower v. Farmers Home Administration, 899 F.2d 1136, 1140-41 (11th Cir. 1990)(emphasis added)(citing Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987)).

In re Robertson, 140 F.Supp.2d 1274, 1278 (M.D. Ala. 2001). Plaintiff's claims are state law

tort and contract claims that involve rights independent of federal bankruptcy law and which clearly could exist outside bankruptcy. The court concludes that the present action is not a core proceeding and, accordingly, that abstention is mandatory pursuant to 28 U.S.C. § 1334(c)(2). <u>See id</u>.[7]

## CONCLUSION

For the foregoing reasons, defendants have not met their heavy burden of establishing fraudulent joinder. Additionally, while the court has "related to" bankruptcy jurisdiction, abstention is required. Accordingly, it is hereby

ORDERED that the plaintiff's motion to remand (Doc. # 6) is GRANTED, and this action is REMANDED to the Circuit Court of Macon County, Alabama, pursuant to 28 U.S.C. § 1334(c)(2).

DONE, this 24th day of May, 2005.

/s/ Susan Russ Walker<br>
SUSAN RUSS WALKER<br>
UNITED STATES MAGISTRATE JUDGE

---

[7] In view of this conclusion, the court does not address the parties' arguments regarding permissive abstention.